IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JUDD MCCURDY, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No.  2:25-cv-02041-HLT-RES** |
| **MARSHALL UNRUH,  et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiffs are Western Kansas Ag, Inc. and its owner Judd McCurdy. Defendant Paul Niblock was a co-owner, but McCurdy bought out Niblock's interest after their relationship soured. Niblock then became a competitor, and he befriended Defendant Wallace County Sheriff Marshall Unruh. Plaintiffs allege that Niblock took large amounts of cash from Western Kansas Ag after selling his interest to McCurdy. Plaintiffs also allege that Niblock and Unruh conspired to hurt Western Kansas Ag by damaging McCurdy's reputation and misrepresenting the company's health to business acquaintances, prominent community members, and family members. Plaintiffs bring § 1983 claims for violation of their procedural due process rights and civil conspiracy, and they assert various state law claims.

Defendants move to dismiss under Rule 12(b)(6). Docs. 28, 30. They argue Plaintiffs fail to allege a plausible § 1983 due process or § 1983 civil conspiracy claim. They also challenge Plaintiffs' state law claims. The Court agrees Plaintiffs do not state a plausible § 1983 due process claim because they do not allege Unruh's false statements caused a change in their legal status. Plaintiffs also do not state a plausible § 1983 conspiracy claim because they do not adequately allege Defendants conspired to violate Plaintiffs' due process rights. The Court therefore dismisses

those claims with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses those claims without prejudice.

## I.    BACKGROUND[1]

McCurdy owns a business in Wallace County, Kansas, called Western Kansas Ag, Inc. Western Kansas Ag operates within the agricultural industry. McCurdy and Niblock were business partners. Their business relationship deteriorated, and McCurdy bought out Niblock's interest. Niblock became a competitor. Niblock also developed a friendship with Defendant Marshall Unruh (the Wallace County Sheriff). Niblock and Unruh socialized with one another, and Niblock's vehicle was seen at Unruh's preferred "after hours" establishment on multiple occasions.

After McCurdy and Niblock's relationship soured, Unruh began a campaign to damage McCurdy's reputation and harm his business by doing the following:

- Unruh arrested a man who was preparing to sign documents to become McCurdy's new business partner even though the man had not violated any law.

- Unruh secured confidential business information about Western Kansas Ag from its secretary and then contacted McCurdy's family members and business associates.

- Unruh told a probate judge in another county that McCurdy is a liar, is a thief, is stealing his grandmother's identity, and had been arrested for smuggling drugs out of Mexico.

- Unruh told McCurdy's father that McCurdy is broke, is going out of business, and is nothing but a liar.

- Unruh told Niblock (now a competitor) Plaintiffs' financial information.

- Unruh told Plaintiffs' insurance company that Plaintiffs were broke and would be going out of business.

- Unruh told Plaintiffs' wholesaler that Plaintiffs were going out of business.

- Unruh made similar comments to other business associates and members of the Wallace County community.  He also told many of these same people that McCurdy had been arrested for smuggling drugs out of Mexico.

---

[1]    These facts are taken from the operative complaint and assumed true for purposes of the Rule 12(b)(6) motion.

●      Unruh pulled over Plaintiffs' contract employees and told them they could no longer work for Plaintiffs.

Unruh's statements were false and damaged Plaintiffs' reputations in the community and among their clients. These statements caused several existing customers to cancel commercial contracts with Plaintiffs and prejudiced Plaintiffs' future business prospects. Plaintiffs bring § 1983 claims for denial of procedural due process and civil conspiracy as well as related state law claims. Plaintiffs seek damages and injunctive relief.

## II.    LEGAL STANDARD

A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). A plausible claim is one with enough facts for the court to infer "the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation and citation omitted). On a motion to dismiss, a court ignores a complaint's legal conclusions and assumes the truth of the complaint's well-pleaded non-conclusory factual allegations and draws all reasonable inferences from those allegations in the plaintiff's favor. *Id.* at 678-79.

## III.    ANALYSIS

Defendants argue that the operative complaint fails to allege plausible claims for relief under 42 U.S.C. § 1983 or state law. The Court analyzes each below.

A.    **Section 1983.**

The Court dismisses Plaintiffs' § 1983 procedural due process and conspiracy claims under Rule 12(b)(6). Plaintiffs' procedural due process claims are asserted against all defendants under a "stigma plus" theory. These claims are dismissed because Plaintiffs do not allege Unruh's stigmatizing statements accompanied or resulted in a change in their legal status, which is an element of the claim. In addition, even if Plaintiffs had sufficiently alleged this element, qualified immunity and lack of capacity to be sued independently require dismissal of most of this claim. Plaintiffs' § 1983 civil conspiracy claim also has several flaws. The allegations do not plausibly allege an agreement between Unruh and Niblock, and the claim lacks a predicate (or underlying) § 1983 claim.

1.    Stigma Plus.

The Constitution's due process clause protects the right to a certain level of procedural protection before a governmental deprivation of one's liberty or property interests. Stigmatizing statements by government actors that damage someone's good name or reputation without the opportunity for a name-clearing hearing can, under certain circumstances, violate their rights to procedural due process. *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1229-30 (10th Cir. 2020). But whether stigmatizing statements deprive someone of liberty or property isn't solely dependent on their egregiousness or their capacity to do damage to one's public reputation. *Id.*; *Al-Turki v. Tomsic*, 926 F.3d 610, 617 (10th Cir. 2019) (explaining that the Supreme Court has rejected "the proposition that reputation alone" is "sufficient to invoke the procedural protection of the Due Process Clause"). The statements must also be accompanied by change in the individual's "legal status." *Hinkle*, 962 F.3d at 1229-30.  The idea is that the statement be more than just economically or reputationally consequential. *See id.* at 1230-31; *Phelps v. Wichita Eagle-*

*Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989) ("Even if defendants' actions made plaintiff less attractive to employers or clients, that is insufficient to state a deprivation of a liberty or property interest under [§] 1983."). It must affect someone's freedom under the law to do certain things or their entitlement to certain property. *Hinkle*, 962 F.3d at 1230. It must, in other words, "significantly alter [one's] status as a matter of state law." *Id.*

Examples of where stigmatizing statements are accompanied by a change in legal status include:

- Statements by a government employer that are in connection with termination. *Guttman v. Khalsa*, 669 F.3d 1101, 1125-26 (10th Cir. 2012).

- Statements by a government agency that result in requiring a person to register as a sex offender. *Gwinn v. Awmiller*, 354 F.3d 1211, 1223-344 (10th Cir. 2011), *cert. denied*, 543 U.S. 860 (2004).

- Statements by a government agency that result in the loss of a government license to do certain things. *E.g., Phelps*, 886 F.2d at 1269 (losing license to practice law).

The Southern District of New York has observed that the "common thread" is that the stigmatizing statement must create a change in legal status by burdening a protected interest through the "formal operation of law." *Tafuto v. N.Y. State Office for Children and Family Servs.*, 2012 WL 4459803, at *5 (S.D.N.Y. 2012). This type of change does not occur when a plaintiff merely alleges increased difficulty in obtaining employment or alleges harm to future economic prospects or existing commercial relationships with non-government clients. *Phelps*, 886 F.2d at 1269.

It is the absence of an alleged change in legal status – one of the elements of a § 1983 procedural due process stigma plus claim – that fates for dismissal Plaintiffs' § 1983 procedural due process claims. Plaintiffs' operative complaint contains numerous allegations that Unruh said false things about them (about McCurdy in particular). And it alleges these false statements were

stigmatizing and harmed their reputations. Plaintiffs also allege that the statements caused some of their clients to leave and to cancel existing contracts. Allegations of false statements that do reputational harm aren't the problem for Plaintiffs. The problem is that Plaintiffs don't allege their legal status changed in connection with the statements. Plaintiffs don't allege that they, for in instance, lost a license necessary for operating their business or that they lost the benefit of a corporate organizational form or that their bank accounts or business property were seized. And the absence of allegations like these means that Plaintiffs have only alleged the "stigma," but they haven't alleged the "plus." Both are needed. *See id.* at 1269 ("Here, plaintiff has not been foreclosed from practicing law. At most, he alleges that the newspaper articles made him less attractive to potential clients."); *Hinkle*, 962 F.3d at 1230-31 ("[Plaintiff] must show a significant, material change in a legal status—such as losing the right to drive a car or being wrongfully registered as a sex offender."). Plaintiffs have therefore not stated a § 1983 procedural due process claim for stigma plus against any defendant for any of the relief sought.

The Court dismisses the stigma plus claims in their entirety because Plaintiffs do not allege a change in legal status. But there are other problems for Plaintiffs' stigma plus claims independent of and in addition to this failure:

- <u>Qualified Immunity</u>**.** Unruh is entitled to qualified immunity, which provides an independent reason to dismiss the stigma plus claim brought against him in his individual capacity for damages. Unruh raises a qualified immunity defense in his motion to dismiss. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Guttman*, 669 F.3d at 1125 (internal quotation marks, citations, and alterations omitted). Plaintiffs do not direct the Court to authority holding that loss of private customer contracts or reputational damage due to a governmental actor's false statements constitutes a change in legal status. Unruh is qualifiedly immune from Plaintiffs' stigma plus claim against him in his individual capacity for damages.

- <u>Lack of Capacity.</u> The Wallace County Sheriff's Department lacks the capacity to sued. This is an independent reason to dismiss the stigma plus claims against it for all forms of relief. Under Kansas law, a county sheriff's department (much like a municipal police department) is without capacity to sue or be sued. *Brown v. Sedgwick Cnty. Sheriff's Off.*, 513 F. App'x 706, 707-08 (10th Cir. 2013) (concluding that a county sheriff's department lacked the capacity to be sued under Kansas law and that the plaintiff's claims should have been brought against the board of county commissioners). The Wallace County Sheriff's Department is not a proper defendant for any claim for any form of relief.

- <u>Lack of State Action.</u> Niblock's status as a private actor is similarly problematic for Plaintiffs' § 1983 stigma plus claim against him. A § 1983 claim won't lie unless the complained-of constitutional deprivation was due to action by a defendant "under color of state law." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1235 (10th Cir. 2020). Usually this means that the defendant was a state actor. But there are exceptions to this general rule. Private actors can be liable for their own conduct under § 1983 when the conduct is "fairly attributable to the [s]tate" and not "merely private." *Id.* There are a couple of ways this can occur. And Plaintiffs affirmatively allege one of them in a separate count against Niblock – conspiracy. *See id.* But this is the only avenue for attributing Niblock's conduct to the state that Plaintiffs appear to pursue. Plaintiffs don't allege facts that would support any of the others. Plaintiffs' separate § 1983 stigma plus claim against Niblock for damages and injunctive relief therefore fails.

The Court dismisses Plaintiffs' § 1983 procedural due process stigma plus claim against Defendants. Plaintiffs do not allege that Unruh's allegedly stigmatizing statements were connected with a change in their legal status. Plaintiffs therefore do not allege a governmental deprivation of a liberty or property interest necessary to support a procedural due process claim.

2.    Conspiracy.

The Court also dismisses Plaintiffs' § 1983 civil conspiracy claim against Niblock. "A § 1983 conspiracy claim may arise when a private actor conspires with a state actor to deprive a person of a constitutional right under color of state law." *Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990). As noted above, conspiracy is one way to attach § 1983 liability to private actors for nominally private conduct. *Barnett*, 956 F.3d at 1235. To state a § 1983 conspiracy claim, a plaintiff must allege an underlying constitutional deprivation and an agreement

among the defendant and state actors to cause the deprivation. *See Dixon*, 898 F.2d at 1449 n.6; *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022). A plaintiff must allege "specific facts showing an agreement and concerted action among the defendants" to violate a federally protected right. *Bledsoe*, 53 F.4th at 609.

There are two problems with Plaintiffs' conspiracy claim. First, as Defendants point out, Plaintiffs do not allege with specificity the existence of an agreement between Niblock and Unruh to make the stigmatizing statements that allegedly violated their due process rights. Plaintiffs merely allege that Defendants saw each other socially and that Niblock's vehicle was seen where Unruh spent time "after hours." The gap between this vague factual premise and the conclusion that there must have been an agreement to damage Plaintiffs' reputation is simply too expansive for any reasonable inference to bridge. Second, even if Plaintiffs' allegations had been sufficiently specific about Defendants' agreement, the failure of the stigma plus claim means that Plaintiffs' conspiracy claim necessarily must also fail. The Court therefore dismisses the § 1983 conspiracy claim with prejudice.

## B.   State Law Claims.

The jurisdictional hook for Plaintiffs' state law claims (conversion, tortious interference with business relations, tortious interference with contract, and defamation) is 28 U.S.C. § 1367. This type of jurisdiction is called supplemental (or sometimes pendent) jurisdiction. The idea behind supplemental jurisdiction is to give litigants who have related state and federal claims the ability to seek complete relief in a federal forum. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Where, as here, the federal claims are subsequently dismissed under Rule 12(b)(6), a court has discretion over whether to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). And in this sort of case, the Supreme Court has instructed courts generally to decline to exercise it. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *accord. King v. Fleming*, 899 F.3d 1140,

1154 (10th Cir. 2018). Even so, there are exceptions to the general rule. And the Tenth Circuit has directed courts to "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity" when determining whether to exercise supplemental jurisdiction. *King*, 899 F.3d at 1154. Here, the factors confirm that the Court should decline to exercise supplemental jurisdiction. Plaintiffs' federal claims are being dismissed at the pleading stage and before any discovery has taken place. All the parties are Kansans. Resolution of the claims would require the Court to take substantive positions on Kansas state law. And nothing about the state law claims in play implicates federal interests or bears on federal policy issues. The Court in its discretion therefore declines to exercise supplemental jurisdiction over the remaining state law claims. It dismisses those claims without prejudice.

## IV.    CONCLUSION

The Court dismisses Plaintiffs' § 1983 claims with prejudice because they fail to state plausible claims for relief.[2] The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismisses those claims without prejudice. Although the outcome is favorable to Defendants, the Court is careful to note that it does not pass on the veracity of the operative complaint's allegations. Many of these allegations are deeply troubling and paint a portrait of a prominent public official who has used the authority of his office to pursue a personal vendetta against a private citizen. Not all acts of public corruption, dishonesty, or abuse of

---

[2]    Dismissal with prejudice is generally proper under Rule 12(b)(6). And nothing in the Federal Rules or the substantive standards governing motions to dismiss requires a district court to specifically consider whether dismissal with prejudice is proper when granting a Rule 12(b)(6) motion. The Federal Rules, in fact, affirmatively support the opposite view: "By providing that Rule 12(b)(6) dismissals are with prejudice unless the district court in its discretion states otherwise, Rule 41(b) indicates that dismissals are typically with prejudice and do not require particular justification by the district court." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 132 (D.C. Cir. 2012) (Kavanaugh, J., concurring). Moreover, Plaintiffs have already amended their complaint in response to Defendants' motions to dismiss. This is, in effect, their second bite at the apple. The Court therefore dismisses with prejudice.

discretionary authority are susceptible to adjudication in federal court as claims brought under §
1983. But neither does that mean that no claims lie against the perpetrators of such acts in some
other forum under some other theory of relief.

THE COURT THEREFORE ORDERS that Defendants' motions to dismiss (Docs. 28, 30)
are GRANTED IN PART. The Court DISMISSES WITH PREJUDICE Counts I through III of
Plaintiffs' amended complaint. The Court declines to exercise supplemental jurisdiction of
Plaintiffs' remaining claims and DISMISSES them WITHOUT PREJUDICE.

The case is closed.

IT IS SO ORDERED

Dated: August 13, 2025                           /s/ *Holly L. Teeter*
                                                 HOLLY L. TEETER
                                                 UNITED STATES DISTRICT JUDGE